# Maintenance Vendor Service Agreement

This Maintenance Vendor Service Agreement is made and entered into this ____ day of November, 2024 ("Effective Date") by and between US Holdings LLC, a Colorado limited liability company dba NavAuto1, with a principal address at 221 East 56th Avenue, Denver CO 80216 (hereafter referred to as "SERVICE PROVIDER"), and Sixt Rent a Car, LLC, a Delaware limited liability company, with a principal address at 1501 NW 49th St., Ste. 100, Fort Lauderdale, FL 33309 ("Client"), individually, "the Party" or "the Client" and together, "the Parties".

## RECITALS

1. The "Agreement" shall refer to the terms and conditions contained herein, including any exhibit attached hereto and incorporated herein, which together shall set forth the entire understanding of the Parties with respect to the subject matter described herein and constitute the entire agreement between the Parties;

2. "Statement of Work" means the document(s) attached as "Exhibit A-1" hereto, including any subsequent Statement of Work attached as Exhibit A-2, A-3, etc., which is signed by both Parties and references this Agreement. Each Statement of Work shall be governed by the terms and conditions herein;

3. The purpose and activity of the Client is renting its motor vehicles ("Vehicle(s)") to individuals, corporate clients, and other entity customers ("Customer(s)"). The "Sixt" brand represents high quality mobility solutions and has gained its prestige as innovative and service-oriented, meeting the highest standards of customer service and professionalism;

4. Client desires to have SERVICE PROVIDER perform certain maintenance and mechanical services on a strictly independent contractor basis with respect to Client's motor vehicle rental business, collectively referred to as the "Vehicle Services" as more particularly described herein and in the Statement of Work(s) attached hereto and incorporated herein by reference;

5. SERVICE PROVIDER may provide Vehicle Services to one or more Client locations pursuant to a Statement of Work, detailing the rates specific to the Client location and shall begin performing the Vehicle Services pursuant to this Agreement on the date indicated on the Statement of Work for each respective location; and

6. SERVICE PROVIDER declares that it has the means and support infrastructure to meet the needs expressed by the Client and is willing to perform the Vehicle Services on behalf of the Client consistent with and pursuant to the provisions set forth in this Agreement and its Exhibits.

## AGREEMENT

**NOW**, **THEREFORE**, for good and valuable consideration, including the mutual promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Services.

1.1 SERVICE PROVIDER will perform the Vehicle Services through its own employees, mechanics, technicians, towing service providers, or other independent contractors (collectively, "Technician(s)") in accordance with the specifications herein and in the relevant Statement of Work. SERVICE PROVIDER's obligations hereunder shall extend to the Technicians, and all Technician obligations shall be assumed by SERVICE PROVIDER. SERVICE PROVIDER will verify the Technicians are properly licensed and certified to perform the Vehicle Services and both SERVICE PROVIDER and all Technicians shall comply with all federal, state, and local laws in the performance of the Vehicle Services.

1.2 Client shall deliver Vehicles to the Client location as described in Section 1 of the Statement of Work ("Premises") for Vehicle Services; Service Provider may use at its own discretion, its other repair facilities for those repairs within the scope of the Agreement provided it causes no undue delays in Vehicle Services. Client shall determine the time and place for any request for Vehicle Services. Client shall provide a suitable work location and equipment at the Premises, for the Vehicle Services that are best served at such location. Client represents and warrants to SERVICE PROVIDER that it currently carries, and will maintain during the Term of this Agreement, sufficient insurance coverages for such work location and equipment. Pursuant to Section 1.3 below, Service Provider may transport Vehicles for Vehicle Services to an insured and licensed location operated as part of its ordinary business, for those Vehicle Services better provided by its facilities directly.

Neither SERVICE PROVIDER nor any Technician is permitted to use the Premises, Vehicles, or any equipment provided by Client for any purpose other than as defined in this Agreement.

1.3 In the event SERVICE PROVIDER transports Vehicles pursuant to Section 1.2, the following shall apply:

a. Risk of Loss. SERVICE PROVIDER shall bear risk of loss to all Vehicles while in the possession and control of SERVICE PROVIDER.

b. Responsibility for Safety, Compliance, and Covered Vehicle Conditions.

i. SERVICE PROVIDER shall ensure that all of its Technicians who are engaged in providing Vehicle Services pursuant to this Agreement, satisfy the following conditions:

(a) have a legal and valid Driver's License and carry the same with them at all times they are engaged in providing Vehicle Services;
(b) have not been convicted of any motor vehicle moving violations within three (3) years prior to providing Vehicle Services;
(c) have not been convicted of driving under the influence (DUI) or a similar alcohol or drug related offense while operating a motor vehicle; and
(d) are legally authorized to work in the U.S., SERVICE PROVIDER having verified the employment eligibility and identity of its Technicians pursuant to From I-9 Requirements.

ii. Prior to taking possession of any Vehicle, SERVICE PROVIDER shall ensure that Technicians review the condition of each Vehicle and report any damage to Client in writing. SERVICE PROVIDER shall be fully responsible for any damage not reported to Client in writing prior to Technicians taking possession of the Vehicle. In addition, SERVICE PROVIDER shall be fully responsible for any damage, injury, or losses of any kind to a Vehicle, whether or not caused by SERVICE PROVIDER or a Technician, including incidents of theft of personal property, during the period the Vehicle is in SERVICE PROVIDER's possession and control for the provision of the Vehicle Services (a "Covered Vehicle Condition"). Subject to the terms of this Agreement, SERVICE PROVIDER assumes responsibility for Covered Vehicle Conditions whether resulting from SERVICE PROVIDER or the actions or omissions of SERVICE PROVIDER or any Technician or for any issues that arise while the Vehicle is in the possession and control of SERVICE PROVIDER.

1.4 *Nature of Relationship*. The only relationship between Client and SERVICE PROVIDER or any Technicians, will be that of independent contractors. It is understood and agreed that (i) no agency, employment, joint venture, co-employer, or partnership is created hereby or between the Parties; (ii) the Vehicle Services to be provided by SERVICE PROVIDER are separate and apart from other business which may be conducted by Client; and (iii) no representation will be made by either Party which would create an agency, employment, or partnership relationship. Neither Client on behalf of SERVICE PROVER or its Technicians, nor SERVICE PROVIDER or its Technician on behalf of Client, shall (a) have the power or authority to act for the other in any manner to create obligation or debts which would be binding upon the other; (b) be responsible for any obligation or expense of the other unless pursuant to indemnities or warranties being provided by Client or SERVICE PROVIDER as set forth herein; or (c) be responsible for any act or omission of the other unless pursuant to indemnities or warranties being provided by Client or SERVICE PROVIDER as set forth herein. Nothing in this Agreement may be deemed to make SERVICE PROVIDER, or any Technician, an employee of Client. SERVICE PROVIDER will have control over the Vehicle Services provided by the Technicians and the manner in which the assignment is performed and the requested results are achieved, including, but not limited, to the assignment of the Technicians, the daily scheduling, etc. SERVICE PROVIDER, or any of its Technicians, will have no claim under this Agreement or otherwise to any vacation pay, sick leave, retirement, insurance, social security, workers' compensation, disability or unemployment benefits, or employee benefits of any kind against Client. Technicians are, and

shall at all times remain, employees or contractors of SERVICE PROVIDER, and SERVICE PROVIDER shall defend, indemnify, and hold harmless Client from any claims asserted against Client for any reason whatsoever, including, but not limited to, SERVICE PROVIDER's employment practices or contractual relationships with the Technicians and all claims arising out of injuries occurring on the job.

2. Compensation; Billing Procedures.

2.1 Client will pay SERVICE PROVIDER for the Vehicle Services in accordance with the rates described in the relevant Statement of Work where the Vehicle Services were performed. Unless otherwise specified in the relevant Statement of Work, SERVICE PROVIDER shall submit itemized weekly invoices, which shall be accompanied by any required attachments, reference the purchase order number for each charge, and identify the odometer reading on the Vehicle upon the completion of the Vehicle Services, to Client at sixt-invoice@xmail.crossinx.com by the end of each week for Vehicle Services performed and completed by SERVICE PROVIDER during such prior calendar week. Client shall remit payment for all undisputed invoices via electronic funds transfer within thirty (30) days of receipt of the invoice. Undisputed invoices not paid when due shall bear interest at a rate of 1.5% per month from the past-due date until paid in full. Incomplete or incorrect invoices (e.g., missing purchase order numbers) will be returned to SERVICE PROVIDER for correction before payment will be made. In the event one month ends and another month begins during the weekly invoice period, SERVICE PROVIDER will submit two (2) invoices for that week to separate the Vehicle Services provided in the different months. SERVICE PROVIDER also agrees to provide Client with a monthly statement detailing all outstanding invoices.

Blue Federal Credit Union

Account Number: 876995

Routing Number: 307070034

2.2 Unless otherwise specified in the relevant Statement of Work, SERVICE PROVIDER shall bear all expenses incurred in connection with the Vehicle Services.

2.3 Client reserves the right to set-off any amounts owed by SERVICE PROVIDER to Client from any future payments due to SERVICE PROVIDER in the event SERVICE PROVIDER fails to remit payment to Client within thirty (30) days of Client's written notice of any amounts owed pursuant to the terms and conditions herein (e.g., reimbursements for property damage to the Vehicles, etc.).

2.4 Client does not guarantee any minimum of Vehicle Services billable by SERVICE PROVIDER nor is Client obligated to create business in order to meet a certain figure of accounts receivable.

3. Purchase Orders.

3.1 Client may, at any time, submit a purchase order or other written request to SERVICE PROVIDER, either electronically to SERVICE PROVIDER to request the performance of a Vehicle Service. Each purchase order may contain one (1) or multiple Vehicle Service request(s) to be performed on a Vehicle. The purchase order or other written request will detail the Vehicle Service requested and the vehicle identification number for the Vehicle to which the Vehicle Services are to be performed. All Vehicle Services must be fulfilled in accordance with the service level commitments described in the Statement of Work.

4. Confidentiality.

4.1 SERVICE PROVIDER shall keep confidential and not disclose to any third-party or use (except as contemplated by this Agreement to perform the Vehicle Services) any information obtained from Client ("Confidential Information"), including information related to the Vehicles, such as mileage, vehicle identification numbers, fleet size, fuel usage, odometer readings, or any aggregate thereof; *provided, however*, that SERVICE PROVIDER shall be prohibited from disclosing or using Confidential Information that it can demonstrate: (i) is publicly available or becomes publicly available through no act or omission of Client, (ii) is or has been disclosed to SERVICE PROVIDER by a third-party who is not under an obligation of confidentiality with respect thereto, (iii) is or has been independently developed by a third-party without use or reference to Client's Confidential Information, or by persons without access to the same, or (iv) must be used or disclosed under court order or applicable law, provided such use or disclosure is to the minimum extent required by such court order or applicable law. SERVICE PROVIDER acknowledges and agrees that, due to the unique nature of the Confidential Information, there can be no adequate remedy at law for breach of this Section 4 and that such breach would cause irreparable harm to Client; therefore, Client shall be entitled to seek immediate injunctive relief, in addition to whatever remedies it might have at law or under this Agreement. The existence and terms of this Agreement shall be deemed the Confidential Information of

Client. Notwithstanding the forgoing, Client may disclose Confidential Information to its affiliates, licensees, franchisees, accountants, attorneys, or any professional advisors that are under a statutory obligation to treat the disclosed Confidential Information as confidential.

5. Term; Termination.

5.1 This Agreement shall commence on the Effective Date and remain in effect for two (2) years thereafter (the "Initial Term"), unless earlier terminated in accordance with this Agreement. After the Initial Term, the Agreement shall automatically renew for successive one (1) year periods (collectively, the Initial Term and any successive terms shall be referred to as the "Term"), unless either Party provides written notice to the other not less than thirty (30) days prior to the end of any such period of its intent not to renew the Agreement.

5.2 Notwithstanding the foregoing, either Party reserves the right to terminate the Agreement by providing at least thirty (30) days' prior written notice to the other Party at any time and at no penalty whatsoever. Any such termination may be limited to one or more Statement(s) of Work, in which case, the consequences of termination will be limited to the location or subject matter of such Statement(s) of Work.

5.3 Notwithstanding the foregoing, either Party may terminate this Agreement immediately upon written notice to the other Party upon the occurrence of any of the following events: (i) the other Party hereto becomes the subject of a bankruptcy petition filed in a court in any jurisdiction, whether voluntary or involuntary (which petition, if involuntary, is not dismissed within ninety (90) days of such filing); (ii) a receiver or a trustee is appointed for all or a substantial portion of the assets of the other Party hereto; or (iii) the other Party hereto makes an assignment for the benefit of its creditors. Either party may terminate this Agreement immediately, without advance notice required, if the other party is in material breach of the Agreement. Notwithstanding the foregoing, a party claiming breach shall provide the allegedly breaching party a written notice of any breach and breaching party shall have up to thirty (30) business days to cure such breach. In the event the breaching party does not cure the breach within the prescribed period (following notice of breach to that party), the claiming party shall have the right to immediately terminate this Agreement as a result of the failure to cure.

5.4 Upon termination of this Agreement, Client agrees to pay SERVICE PROVIDER all uncontested amounts due or accrued as of the date of such termination in accordance with Section 2. Upon termination of this Agreement for any reason, each Party shall return to the other Party or destroy (and so certify to the other Party) any Confidential Information obtained from the other Party.

5.5 The termination rights afforded to the Parties herein shall not affect the Vehicle Services already completed or those that are in progress. SERVICE PROVIDER shall satisfactorily complete all Vehicle Services which have already commenced or for which an estimate has been prepared at the time the notice of termination is given. Notwithstanding, Client may, in its sole discretion, demand that SERVICE PROVIDER immediately cease the provision of Vehicle Services on any Vehicle and Client shall compensate SERVICE PROVIDER for any partial completion of work as of the date of termination of the Agreement by Client, in accordance with Section 2.

5.6 Client shall retain all ownership rights in and to its Vehicles at all times. Neither SERVICE PROVIDER nor any Technician may hold back or maintain possession of any Vehicle for whatever reason if advised by Client to return or hand back over such property, and SERVICE PROVIDER shall return all such property upon demand from Client. Under no circumstance may SERVICE PROVIDER nor any Technician place a lien on any Vehicle undergoing Vehicle Services or related repairs pursuant to this Agreement or otherwise. SERVICE PROVIDER represents that it shall keep the Vehicle(s) and the property where the Vehicles Services are performed, free of any claim or charge from others as a result of the provision of the Vehicles Services. If at any time there shall be evidence of any claim, lien, or security interest for which, if established, Client might become liable and which in any way relates to, or arises out of the Vehicles Services, the Client shall have the right to retain out of any payments then due, or thereafter to become due, an amount sufficient to completely indemnify and protect the Client against such lien, claim, or security interest. In the event that any such lien, claim, or security interest shall be filed, SERVICE PROVIDER shall promptly remove or discharge it by bonding, payment or otherwise; and if the SERVICE PROVIDER shall fail to so remove or discharge the same within five (5) days after notice from Client, then Client shall, in addition to its rights hereunder, have the right to remove or discharge the same by bonding, payment or otherwise, in its sole discretion. The amount of any payment, costs, and expenses made or incurred by Client in connection with the removal or discharge of any such lien, claim, or security interest, as aforesaid, may be deducted by Client from any payments or amounts then due or thereafter to become due to the SERVICE PROVIDER. If any amount retained by Client exceeds any future payment due to SERVICE PROVIDER, then Client reserves any rights available under law to recover for any costs or expenses arising from the removal or discharge of any such lien, claim, chattel mortgage, conditional bill of sale or security interest, including the costs or expenses incurred in any related collection efforts. In the event SERVICE PROVIDER or any Technician places a lien on Client's property, SERVICE PROVIDER shall additionally be subject to a liquidated penalty of $100.00 per day per lien. SERVICE PROVIDER agrees to waive any common law or statutory lien rights it may have and will only assign

Technicians to provide the Vehicle Services whom have executed a "lien waiver" to the fullest extent permissible by the laws of the state in which the Vehicle Services are to be provided. SERVICE PROVIDER understands a waiver of such rights was a material inducement for Client to enter this Agreement.

6. Representations and Warranties of SERVICE PROVIDER.

6.1 SERVICE PROVIDER represents and warrants to Client that SERVICE PROVIDER is a Limited Liability Company duly organized, validly existing, and in good standing under the laws of the State of Colorado, and is fully authorized to provide the Vehicle Services by the state and any related municipality in which the Vehicle Services are to be performed. The execution, delivery, and performance by SERVICE PROVIDER of this Agreement has been duly authorized by any necessary manager or all necessary corporate action, and this Agreement constitutes the legal, valid, and binding obligation of SERVICE PROVIDER, enforceable against SERVICE PROVIDER in accordance with the terms herein, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability. SERVICE PROVIDER shall comply with all applicable laws and regulations in connection with this Agreement. SERVICE PROVIDER represents and warrants to Client that the Technicians are fully licensed and authorized to provide the Vehicle Services by the state and any related municipality in which the Vehicle Services are to be performed and are certified to perform the Vehicle Services on a Vehicle by the manufacturer of the Vehicle. SERVICE PROVIDER warrants that Client may rely on the specialized knowledge and skill of the Technicians in providing automobile repair services to the Client. SERVICE PROVIDER represents and warrants that it will only charge Client for Vehicle Services that are properly performed and completed.

7. Representations and Warranties of Client.

7.1 Client represents and warrants to SERVICE PROVIDER that Client is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware. The execution, delivery, and performance by Client of this Agreement has been duly authorized by any necessary manager, and this Agreement constitutes the legal, valid and binding obligation of Client, enforceable against Client in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability. Client shall comply with all applicable laws and regulations in connection with this Agreement.

8. Limited Warranty.

8.1 Vehicle Services, which are performed and completed in accordance with reasonable industry standards and are subject to a "Limited Warranty", the complete terms and conditions are as follows:

8.2 This Limited Warranty is provided by SERVICE PROVIDER and extends to Client and the first subsequent purchaser of the Vehicle on which a Technician performed the Vehicle Services. It shall be understood by all Parties that Client's base of business is to rent Vehicles, which Client may sell within the Limited Warranty period. Subject to the exclusions, limitations, and conditions set forth below, SERVICE PROVIDER warrants that the Vehicle Services shall be free from defects in:

(i) materials; and
(ii) workmanship.

8.3 This Limited Warranty lasts for 12 months or 12,000 miles of use, whichever comes first, measured from the date the Vehicle Services are provided and the odometer reading if shown on the applicable invoice or purchase order (the "Warranty Period"). Some materials provided by Technicians may carry a separate warranty that extends beyond the Warranty Period. In those instances, the term of the manufacturer's warranty will apply to the materials, and workmanship will remain subject to the Warranty Period; such manufacturer's warranty will not release SERVICE PROVIDER from providing the Limited Warranty.

8.4 If there is a materials or workmanship defect within the Warranty Period, then, at Client's sole option and at no additional cost to Client, SERVICE PROVIDER will:

(i) engage a Technician within four (4) hours of Client's notice to perform remedial service work and/or replace the defective part(s) installed in connection with the Vehicle Services, provided the Vehicle is on-site. In the event the Vehicle is no longer located within an area serviced by SERVICE PROVIDER, Client shall have the right to hire substitute performance, and SERVICE PROVIDER agrees to reimburse Client for any reasonable expenses incurred relating to the remedial service work or for the replacement of the defective part(s) installed in connection with the Vehicle Services;

(ii) adjust (or credit) the monthly invoice to Client for agreed upon inspection charges incurred by Client, refund any amount actually paid by Client for the Vehicle Services within twenty-four (24) hours of Client's notice; and reimburse Client for any reasonable transportation costs, loss of use, loss of business opportunities, and other directly related expenses incurred by Client as a result of the Vehicle being unavailable to rent to Client's Customers while the Vehicle was undergoing the diagnosis, inspection, repair, or remedial work; and

(iii) reimburse Client for any reduced resale value resulting from a defect in the Vehicle Services or failure to perform a Vehicle Service confirmed as completed by SERVICE PROVIDER, i.e., using conventional oil during an oil change or failing to perform the oil change.

8.5 This Limited Warranty does not cover:

(i) Any damage to a Vehicle caused by abusive or abnormal use (use in a commercial venture shall not be deemed "abnormal use"), failures to comply with manufacturer maintenance schedules and replacement of wear items, misuse, neglect, alteration or tampering, or by unrelated external causes, such as accidents, fire, flooding, and freezing, acts of god, force majeure, or any natural catastrophe, provided such events did not occur while the Vehicle was in SERVICE PROVIDER's care, custody, and control;

(ii) Any work for which Client has paid the Technician directly, rather than making the payment to SERVICE PROVIDER;

(iv) Any diagnostic or inspection service including pre-purchase inspection services not included on a purchase order or estimate;

(v) Any pre-existing condition with a Vehicle that is not reasonably known by the Technician prior to starting the Vehicle Services and that is discovered during or after the Vehicle Services are performed and not invoiced to Client by SERVICE PROVIDER, unless SERVICE PROVIDER failed to include such charge on the invoice or the repair or replacement is unconnected with the, or another, Technician's Vehicle Services or omission thereof;

(vi) Any repairs that Client requests the Technician perform beyond those included in the Technician's diagnosis of the problem, and which the Technician performs, even if those additional repairs are needed to fix the issue Client asked the Technician to diagnose; provided, however, that if Client authorizes and pays for additional repairs to SERVICE PROVIDER, such additional repairs would be included in the Vehicle Services and covered by this Limited Warranty; and

(vii) Indirect consequential effects of the Vehicle Services performed, unrelated to any of the parts replaced being defective or any of the repair work being done incorrectly (e.g., if Client requests a transmission fluid service, but because Client has not been replacing the transmission fluid regularly, when the Technician replaces the fluid, with the right fluid installed properly, Client's transmission stops shifting properly because it cannot handle the new fluid—this is an "indirect consequential effect" not covered by this Limited Warranty).

Any determination of whether this Limited Warranty does not apply or is otherwise void as to a particular warranty claim shall be made in good faith by the Parties. For the avoidance of doubt, the Limited Warranty does not apply to limit Client's remedies in connection with any charge Client paid for a Vehicle Service not actually performed or Client's ability to recover under an insurance policy.

8.6 Once Client notifies SERVICE PROVIDER of a claim under this Section 8, SERVICE PROVIDER will immediately evaluate the claim to determine preliminary eligibility for coverage of Vehicle Services under this Limited Warranty. When applicable, SERVICE PROVIDER will instruct a Technician to inspect the problem. If the Technician determines that there is a defect in materials or workmanship of the Vehicle Services and Client elects for SERVICE PROVIDER to perform remedial service work and/or replace defective part(s) installed (instead of providing a refund or credit), then SERVICE PROVIDER will timely perform such work and/or replace such part(s) at no cost to Client to restore Client to a position as if the Vehicle Services were properly performed. If the Technician determines that the claimed defect is not the result of a defect in materials or workmanship of the Vehicle Services, then Client will be charged for one hour of labor fees for Technician's evaluation. In the event a reasonable dispute should arise as to a Technician's diagnosis, Client reserves the right to consult with a third-party mechanic mutually acceptable to both Parties to obtain a second diagnosis. In the event the third-party mechanic disagrees with the Technician and determines the claimed defect is the result of a defect in materials or workmanship of the Vehicle Services, then SERVICE PROVIDER will initiate a refund or credit for the defective Vehicle Services and shall remain liable for any other damages caused to Client as a result of the defect in accordance with SERVICE PROVIDER's obligations hereunder, including, but not limited to, repair costs, replacement parts, any transportation costs,

loss of use, loss of business opportunities, and other related expenses incurred by Client as a result of the Vehicle being unavailable to rent to Client's customers while the Vehicle was undergoing the preliminary Limited Warranty coverage determination, diagnosis, inspection, repair, or remedial work.

8.7 If Client notifies SERVICE PROVIDER of a claim and SERVICE PROVIDER determines there is no qualified Technician available to inspect the problem which gives rise to Client's claim or to evaluate whether a defect exists, then SERVICE PROVIDER will notify Client within one (1) hour to allow Client to seek substitute performance from a third-party mechanic. If the mechanic at the repair shop or service center determines that the claimed defect is a result of a defect in materials or workmanship of the Vehicle Services, then SERVICE PROVIDER will reimburse Client for the cost of the repair for the Vehicle Services, including, but not limited to, any transportation costs, loss of use, loss of business opportunities, and other directly related expenses incurred by Client as a result of the Vehicle being unavailable to rent to Client's customers while the Vehicle was undergoing the preliminary Limited Warranty coverage determination, diagnosis, inspection, repair, or remedial work. Upon request by SERVICE PROVIDER, Client will supply SERVICE PROVIDER with a copy of the inspection report and the repair invoice from the automotive repair shop or dealer service center. SERVICE PROVIDER may also request return of any parts found to be defective. Client will use commercially reasonable efforts to return all defective parts replaced under this Limited Warranty to SERVICE PROVIDER at:

221 E. 56th Ave. Denver CO 80216

8.8 SERVICE PROVIDER shall review the condition of the Vehicle before assuming possession of it for the performance of the Vehicle Services. In the event of any visible or observable damage to the Vehicle, SERVICE PROVIDER shall use all reasonable efforts to inform the Client before performing any Vehicle Services on the Vehicle. SERVICE PROVIDER may also document such damage by saving photos to the SERVICE PROVIDER application. If SERVICE PROVIDER begins performance of any Vehicle Services to the Vehicle without notifying the Client or documenting such damage with photos, then any such damage shall be deemed to have occurred during the SERVICE PROVIDER's performance of the Vehicle Services and will be considered a "Mutually Agreed Upon Loss" for which Client may seek payment from SERVICE PROVIDER for any costs for repair of the said damage(s) and SERVICE PROVIDER shall remit payment to Client within thirty (30) days of Client's written notice of the damage.

8.9 In the event of any accident occurring during the course of the performance of the Vehicle Services, whether caused by SERVICE PROVIDER, a Technician, or a third-party, SERVICE PROVIDER or a Technician shall immediately notify Client, and, in the event injury or damage is caused to a third-party, SERVICE PROVIDER or a Technician will immediately contact the local law enforcement agency and obtain a written report of the accident. SERVICE PROVIDER shall also complete its own incident report containing the names of the person(s) involved, their addresses, contact information, a copy of the person(s) driver's license(s), a detailed summary of how the accident occurred, a description of any property damage, and a detailed summary of any physical injuries sustained by any person involved in the accident. SERVICE PROVIDER shall provide a copy of its own incident report to Client as soon as reasonably possible but no later than thirty (30) days from the accident.

9. Indemnification.

9.1 SERVICE PROVIDER will defend, indemnify, reimburse, and hold harmless Client (including its parent, subsidiaries and affiliates and their respective directors, officers, employees, agents, successors, and assigns (together, "Client Indemnified Parties")) against any and all claims, demands, suits, judgments, costs, damages, and expenses (including reasonable legal fees) asserted against, or incurred by, Client and arising out of SERVICE PROVIDER's or any Technician's 1) negligence, omission, or willful misconduct, 2) provision of the Vehicle Services or omission thereof, or 3) failure to perform its obligations hereunder (a "Claim"). Client reserves the right to retain counsel at its own expense to participate in the defense and settlement, if any, of any such Claim. In the event SERVICE PROVIDER does not defend a Claim, Client shall have the right to defend or settle the Claim at SERVICE PROVIDER's expense and SERVICE PROVIDER will reimburse Client for all reasonable expenses so incurred by Client. SERVICE PROVIDER will not settle any Claim asserted against Client Indemnified Parties unless the settlement agreement includes an unconditional release of all Client Indemnified Parties with respect to the Claim.

10. General.

10.1 *Non-Disparagement*. Neither Party shall make any negative or disparaging statements (orally or in writing) about the other or its directors, officers, employees, products, services or business practices, except as required by applicable legal process.

10.2 *Notices*. Except as otherwise set forth herein, all notices and other communications hereunder shall be in writing and shall be deemed given when delivered personally, by e-mail, when faxed (with confirmation of the transmission

received by the sender) or five (5) business days after being delivered to an internationally recognized express courier (with express delivery specified) to the Parties at the addresses set forth below (or at such other address for a Party as shall be specified by like notice).

If to Client, to:
Sixt Rent a Car, LLC
1501 NW 49th Street, Suite 100
Fort Lauderdale, FL 33309
Attn.: Legal Department
Email: legal-usa@sixt.com
Fax: (305) 356-7938

If to SERVICE PROVIDER, to:
221 E. 56th Ave.
Denver CO 80216
Attn.: Ali
Email: ali@navauto1.com

10.3 *Amendment; Waiver*. Neither this Agreement nor any of the terms hereof may be amended, supplemented, waived or modified except by an instrument in writing signed by the Party against which the enforcement of such amendment, supplement, waiver or modification shall be sought. No failure or delay on the part of any Party hereto in exercising any right, power or privilege hereunder and no course of dealing between or among the Parties hereto shall operate as a waiver of any right, power or privilege hereunder. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder. No notice to or demand on any Party in any case shall entitle such Party to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of any Party to any other or further action in any circumstances without notice or demand.

10.4 *Counterparts; Delivery*. This Agreement may be executed in counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Party. Delivery of an executed counterpart by facsimile or e-mail (.pdf) shall be as effective as delivery of a physical signature page.

10.5 *Entire Agreement*. Except as expressly set forth herein, this Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof.

10.6 *Disputes; Governing Law*. If any dispute arises in connection with this Agreement, representatives of both Parties shall, within seven (7) working days of receipt of a written request from one Party to the other, make a good faith effort to resolve the dispute. Neither Party may commence any court proceeding in relation to any such dispute until the Parties have attempted in good faith to settle the dispute, unless the right to issue proceedings would be prejudiced by such a delay. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida, regardless of principles of conflicts of laws that may require the application of the laws of another jurisdiction. Any action or litigation concerning this Agreement will take place exclusively in the federal or state courts sitting in Broward County, Florida, and the Parties expressly consent to the jurisdiction of and venue in such courts and waive all defenses of lack of jurisdiction and inconvenient forum with respect to such courts.

10.7 *Definitional Matters*. Definitions in this Agreement apply equally to the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation" when such phrase does not otherwise appear. The terms "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, paragraph, or subdivision. All article, section, paragraph, clause, exhibit, or schedule references not attributed to a particular document shall be references to such parts of this Agreement.

10.8 *Assignment*. Neither this Agreement nor any of the rights, interests, or obligations hereunder shall be assigned by Client or SERVICE PROVIDER without the prior written consent of the other Party; provided, however, that either Party may assign this Agreement without the consent of the other Party to an acquirer of such Party or of substantially all of such Party's assets. Any purported assignment in violation of this Section shall be null and void.

10.9 *Survival*. Sections 1, 4, 5, 6, 8, 9, 10, and 11, and any other provision, which, by its nature, is intended to survive termination or expiration of this Agreement, shall survive any termination or expiration of this Agreement.

10.10 *Miscellaneous*. The Statement of Work shall take precedence over and shall govern over any inconsistent or conflicting terms in this Agreement, unless the Agreement expressly provides otherwise. Each Party has had an opportunity to have this Agreement reviewed by counsel and there shall not be applied any rule construing ambiguities against the drafting Party. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall remain valid and unimpaired and will continue in full force and effect.

11. Insurance.

11.1 During the Term of this Agreement, SERVICE PROVIDER shall carry and maintain, at SERVICE PROVIDER's expense, the insurance coverages specified below or such other amounts as required by the state in which the Vehicle Services are provided, or as Client may reasonably request, with all insurance companies possessing an AM Best rating of A- or better. All policies shall include coverage for liabilities arising out of premises, operations, independent contractors, products, completed operations, personal and advertising injury, and liability assumed under an insured contract where applicable.

11.2 *Garage Keeper's Direct Primary Insurance.* SERVICE PROVIDER shall maintain garage keeper's direct primary insurance with limits of not less than fifty-thousand dollars ($50,000.00) per occurrence and one-million dollars ($2,000,000.00) in the aggregate against comprehensive and collision causes of loss to the Vehicles.

11.3 *Garage Liability Insurance*. SERVICE PROVIDER shall maintain garage liability insurance covering its and its Technicians' acts and omissions, with coverage in an amount not less than one-million dollars ($1,000,000.00) per occurrence against bodily injury and property damage liability combined.

11.4 *Commercial General Liability ("CGL")*. SERVICE PROVIDER shall maintain CGL coverage with a limit of not less than two-million dollars ($2,000,000.00) each occurrence.

11.5 *Automobile Liability*. SERVICE PROVIDER shall maintain automobile liability insurance covering bodily injury (including injury resulting in death) and loss of or damage to property with limits of not less than one million dollars ($1,000,000.00) per incident and shall be primary and non-contributory. Such insurance shall cover liability arising out of a motor vehicle including owned, hired, and non-owned motor vehicles.

11.6 *Workers' Compensation*. SERVICE PROVIDER shall maintain statutory workers' compensation and employer liability coverage including special coverage extensions where applicable. Employer's liability limits of one-million dollars ($1,000,000.00) shall be required.

11.7 *Umbrella Form Liability Insurance*. SERVICE PROVIDER shall maintain an umbrella or excess liability policy with a limit of not less than two million dollars ($2,000,000.00) each occurrence.

11.8 All deductibles under any of the above policies shall not exceed ten-thousand dollars ($10,000.00).

11.9 For all such coverages, except workers' compensation, Client ("Sixt Rent a Car, LLC") shall be named as an additional insured and shall be primary to any coverage carried by Client and without a right of contribution or subrogation as against Client. All policies will provide that they may not be terminated, or the coverages reduced, except after thirty (30) days' prior written notice to Client. Certificates of Insurance, together with copies of all policy endorsements, if applicable, will be delivered to Client simultaneous with the execution of this Agreement.

| **SERVICE PROVIDER** | **Sixt Rent a Car, LLC** |
| --- | --- |
| By: Ali Anva<br>Ali Anva (Dec 11, 2024 16:07 MST) | By:__________________ |
| Name: Ali Anva | Name:__________________ |
| Title: CFO | Title:__________________ |

**EXHIBIT A-1**
**STATEMENT OF WORK**
**( )**

This Exhibit A is made to and incorporated in the Master Services Agreement made between Sixt Rent a Car, LLC ("Client") and US Holdings LLC dba NavAuto1 ("SERVICE PROVIDER") on ___________, 2024 ("Agreement"). This Exhibit A shall be effective on ______________, 2024 ("Statement of Work Effective Date") for an initial period of two (2) years, and all respective obligations and requirements are subject to the provisions set forth herein:

1. General.
   - 1.1 All capitalized terms used but not defined in this Exhibit A shall have the meanings set forth in the Agreement.
   - 1.2 *Project name*: ____________________________________________________ ("Project").
   - 1.3 *Location*: Denver International Airport, Denver, Colorado ("Premises").
   - 1.4 *Project description*: SERVICE PROVIDER will supply "on-site" general auto repair and maintenance services on Vehicles as detailed below. Client will request the Vehicle Services by electronically sending a purchase order containing a unique purchase order number to an e-mail address provided by SERVICE PROVIDER. Vehicle Services will be performed at a facility provided and designated by Client and approved by SERVICE PROVIDER in advance of the program deployment.

2. Facilities; third-party services; equipment.
   - 2.1 *Client shall provide the following equipment in good working order:*

| | |
|---|---|
| Client | 2 x permanently installed automotive lifts<br>1 x Tire Mounting Machine<br>1 x Tire Balancing Machine<br>1 x Industrial Air compressor with hook ups<br>1 x 300-500-gallon bulk oil storage tank<br>1 x 300-500-gallon waste oil storage tank<br>Space for 2 x 55-gallon oil barrels to store secondary oil grades<br>Portable oil drain tank with 20+ gallons capacity<br>Lockable storage cabinet for on-site parts<br>On-site storage area for tires<br>Area for storage of waste oil filters prior to removal<br>General trash removal service |

2.2 *The Service Provider will procure the following third-party services with reimbursement by Client subject to Client's prior review and written approval of each invoice related to such services*

| | |
|---|---|
| SERVICE PROVIDER | Waste oil and oil filter removal service<br>Waste tire removal service on a bi-weekly basis |

Client shall be responsible for the maintenance of Client-owned equipment. SERVICE PROVIDER shall perform daily inspections of the Client-owned equipment and maintain operational logs required to support maintenance of Client-owned equipment and will advise Client in writing of any potential and/or existing issues related to the maintenance of the Client-owned equipment. Any equipment not listed above, but required for the performance of the Vehicle Service, shall be provided by SERVICE PROVIDER. Notwithstanding the foregoing, in the event of damage to Client's equipment, Client's property, or the Premises as a result of the negligence or misuse of the equipment by SERVICE PROVIDER, SERVICE PROVIDER shall pay for any repair or replacement costs to the equipment, property, or Premises within thirty (30) days of any such damage upon submission of reasonably agreed upon estimates for repair, or replacement. In the event SERVICE PROVIDER fails to remit payment to Client within thirty (30) days of Client's written notice of the costs for the repair or replacement of the equipment, property, or Premises, Client has the right to set-off all such amounts from any future payments due to SERVICE PROVIDER.

SERVICE PROVIDER shall be responsible to procure certain other services as defined above through a qualified and properly licensed and insured third-party vendor. SERVICE PROVIDER will engage with these third-party vendors as mutually agreed upon with Client's facility management. SERVICE PROVIDER shall invoice Client monthly for above enumerated third-party services, and Client shall remit payment under the same Net 30 terms as expressed above.

SERVICE PROVIDER shall maintain a clean working environment and shall wipe down all tools, mop all leaked chemicals, and store tools appropriately.

In no event may SERVICE PROVIDER borrow Client's tools. Vehicle Services shall only be performed on the Vehicles. Vehicle Services shall not be performed on personal vehicles.

Service Provider will supply ordinary maintenance items according to the Schedule A-2 below; including oil, rags, cleaning products, tires, filters, and routine maintenance items called for by any manufacturer schedule; but excluding maintenance issues beyond the Schedule A-2 below, and excluding major repairs to engine, transmission, drive and ventilation components without a separate Purchase Order. Client agrees and understands that tires and brakes cannot be approved by the Service Provider if measured to be below 4/32" remaining material on pads or tire tread.

Service provider will provide no repair services for any employee or agent of Sixt or its affiliates under this Agreement. Any such request for repair will be independent of this Agreement.

3. Parties agree that Client will use Service Provider for auto body and collision repair for its vehicles, without exclusivity or any set quota.

4. <u>Service Performance</u>.

*Service Days / Hours.* SERVICE PROVIDER will perform the Vehicle Services from 8:00 AM to 5:00 PM each day of the week, and shall log all hours on a per Technician basis. Client's hours of operation are subject to change at Client's sole discretion provided Client gives SERVICE PROVIDER fourteen (14) days' prior notice, and any substantial change to the hours of operation may be modified by further written agreement

SERVICE PROVIDER understands and agrees that time is of the essence in the performance of its duties and obligations contained in this Exhibit A and the Agreement, and SERVICE PROVIDER's knowledge, skill, and ability to perform the Vehicle Services within the following fulfillment times is a material inducement for Client. Unless otherwise indicated in the corresponding purchase order or the occurrence of: acts of God, fire, explosion, power or water outage outside the control of SERVICE PROVIDER, or interruption of the Services by a municipality or the governing body of the airport, if applicable, the Vehicle Services shall be fulfilled as follows:

(i) For purchase orders received before 3:00PM, the Vehicle Services shall be fulfilled the same day.

(ii) For purchase orders received after these hours, the Vehicle Services shall be fulfilled prior to 10:00AM the following service day.

Any such repair schedule is subject to availability of parts and supplies. The above fulfillment schedules are temporarily waived when SERVICE PROVIDER is above capacity. SERVICE PROVIDER is at capacity when Client submits more than a certain number of purchase orders for that specific day ("<u>Daily Minimum</u>"). The Daily Minimum for Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays is twenty (20) purchase orders on that day. The Daily Minimum for Saturdays and Sundays is more than twenty (20) purchase orders for that day. Client may alter the amount of the Daily Minimum upon reasonable notice to SERVICE PROVIDER and only if both Parties agree to amend this Exhibit A accordingly.

The above fulfillment schedules are subject to parts' availability at the time the purchase order is received. Client understands that parts may not be immediately available for any particular repair on the day a service is requested.

5. <u>Minimum Staffing Levels</u>.

SERVICE PROVIDER will perform the Vehicle Services for Client with due care in accordance with the service level commitments described herein, and affirms the selected Technicians are qualified to professionally and competently perform the Vehicle Services.

SERVICE PROVIDER agrees to provide sufficient SERVICE PROVIDER personnel to meet Client's designated staffing levels to perform the Vehicle Services.

6. <u>Payment and Invoicing</u>.

Payments shall be made in accordance with the rates indicated on Table A of Schedule A-2, which shall be incorporated herein and attached hereto.

Payments shall be made in accordance with Section 2 of the Agreement.

This Statement of Work is entered into between Client and SERVICE PROVIDER and is subject to the terms and conditions described in the Agreement. By signing below, the Parties hereto, each acting under due and proper authority, agree to make this Statement of Work a part of the Agreement.

**SERVICE PROVIDER**

By: Ali Anva
Ali Anva (Dec 11, 2024 16:07 MST)
Signature

Name: Ali Anva
Print

Title: CFO

**SIXT RENT A CAR, LLC**

By: ______________________
Signature

Name: ______________________
Print

Title: ______________________

**SCHEDULE A-2**
**RATES**
**(______)**

**Effective Date:________________**

This Schedule A-__ is incorporated in the Maintenance Vendor Services Agreement made between US Holdings LLC dba NavAuto1, ("**SERVICE PROVIDER**") and Sixt Rent a Car, LLC ("**Client**") dated _________ ("**Agreement**") and any and all Exhibits attached thereto. This Schedule A-2 sets forth the pricing for the Vehicles Services to be performed at the following location: Sixt Rent a Car at _________________________________ ("**Premises**").

| **Table A** | |
|---|---|
| General Labor Rate* | $ 100.00 / Service Hour |
| OEM or Manufacturer Designated Synthetic LOF-R + 50 pt. Inspection | $ 80.00 |
| OEM or Manufacturer Designated Synthetic Blend LOF-R + 50 pt. Inspection | $ 80.00 |
| Tire Mount & Balance (Labor) | $ 25.00 |
| Tire Repair | $ 40.00 |
| Tires provided by Service Provider | $ Retail pricing |
| Auto Body and Paint Labor | $ 48.00/hr |
| Frame repair Labor | $ 75.00/hr. |
| Paint Supplies | $ 38.00 |
| Aluminum | $ 75.00 |

*UNDER NO CIRCUMSTANCES MAY SERVICE PROVIDER USE CONVENTIONAL OIL.*
All prices are inclusive of applicable taxes and recycling/disposal fees, if any.
LOF = Lube Oil Filter. LOF-R = Lube Oil Filter + Tire Rotation.
*Labor times for jobs are based on industry standard book times.

As of _______________________, this Schedule A-2 shall be effective and shall replace and supersede any and all prior pricing arrangements applicable to the Premises.

**SERVICE PROVIDER:**

By: Ali Anva
Ali Anva (Dec 11, 2024 16:07 MST)
Print Name: Ali Anva
Title: ____________________
Date: 12/11/2024

**SIXT RENT A CAR, LLC**

By: ____________________
Print Name: ____________________
Title: ____________________
Date: ____________________

# 11.19.24_Clean_Combined Template - Maintenance Vendor MSA

Final Audit Report 2024-12-11

| | |
|---|---|
| Created: | 2024-12-11 |
| By: | Brian DeBauche (brian@denverlawshark.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAApgnb6cZ6_nyN4H0raAlKkpaEud6dhxeQ |

## "11.19.24_Clean_Combined Template - Maintenance Vendor MSA" History

Document created by Brian DeBauche (brian@denverlawshark.com)
2024-12-11 - 10:44:30 PM GMT

Document emailed to Ali Anva (ali@navauto1.com) for signature
2024-12-11 - 10:44:36 PM GMT

Email viewed by Ali Anva (ali@navauto1.com)
2024-12-11 - 11:06:59 PM GMT

Document e-signed by Ali Anva (ali@navauto1.com)
Signature Date: 2024-12-11 - 11:07:56 PM GMT - Time Source: server

Agreement completed.
2024-12-11 - 11:07:56 PM GMT